IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARC DAGUPION, | ) | CIVIL NO. 11-00120 SOM/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT PNC |
| | ) | BANK, NATIONAL ASSOCIATION'S |
| vs. | ) | MOTION FOR RULE 11 SANCTIONS |
| | ) | |
| GREEN TREE SERVICING, LLC; | ) | |
| NATIONAL CITY MORTGAGE CO., a | ) | |
| subsidiary of NATIONAL CITY | ) | |
| BANK now known as PNC BANK, | ) | |
| NATIONAL ASSOCIATION; LOAN | ) | |
| NETWORK LLC; JOHN DOES 1-10; | ) | |
| JANE DOES 1-10; DOE | ) | |
| CORPORATIONS, PARTNERSHIPS OR | ) | |
| OTHER ENTITIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |

ORDER GRANTING DEFENDANT PNC BANK,
NATIONAL ASSOCIATION'S MOTION FOR RULE 11 SANCTIONS

I.      INTRODUCTION.

        Before the court is a motion by Defendant PNC Bank,

National Association ("PNC") to sanction Plaintiff Marc Dagupion

("Dagupion") and his attorney pursuant to Rule 11 of the Federal

Rules of Civil Procedure.  Dagupion filed this lawsuit alleging

that Defendants, including PNC, violated state and federal

statutes in handling his residential mortgage loans.  PNC moves

for sanctions alleging numerous deficiencies in Dagupion's First

Amended Complaint ("FAC").  Dagupion's attorney has been warned

multiple times by this judge and other judges in this district

that the continued filing of complaints with the specific

deficiencies found in Dagupion's FAC will likely result in

sanctions.  As Dagupion's attorney repeats his oft-criticized practices, the court grants PNC's motion.

II.      <u>LEGAL STANDARD</u>.

Rule 11(b) of the Federal Rules of Civil Procedure requires that parties present arguments that are warranted by law and nonfrivolous.  All parties must "certif[y] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b).  Rule 11 applies to all pleadings and written motions filed with the court, including complaints.  Fed. R. Civ. P. 11(a).  If the court determines that Rule 11(b) has been violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c).

"Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact . . . ."  <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 393

2

(1990).  Thus, before filing a complaint, a party has an "affirmative duty" to conduct a reasonable inquiry into the facts and law of the case.  See Lloyd v. Schlag, 884 F.2d 409, 412 (9th Cir. 1989).  The conduct of the signing party is "one of objective reasonableness under the circumstances."  Hudson v. Moore Bus. Forms, Inc., 836 F.2d 1156, 1159 (9th Cir. 1987). A showing of subjective bad faith is not required.  See Smith v. Ricks, 31 F.3d 1478, 1488 (9th Cir. 1986).

When a complaint is the focus of Rule 11 proceedings, the Ninth Circuit instructs district courts to "conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it."  Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005) (quoting Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002)).  The Ninth Circuit uses the word "frivolous" as shorthand to denote that a filing is "both baseless and made without a reasonable and competent inquiry." Id. (quotation marks omitted).

III.     FACTUAL AND PROCEDURAL BACKGROUND.

A.   Factual Background.

The FAC sets forth the following factual background. First Amended Complaint, July 14, 2011, ECF No. 36.  On April 12, 2007, Dagupion purchased property in Wailuku, Hawaii, on the

island of Maui.  Id. ¶ 18.  National City Mortgage, through

Defendant Loan Network, LLC ("Loan Network"), provided Dagupion

with two loans.  Id. ¶ 20.  National City Mortgage was PNC's

predecessor.  Loan Network allegedly committed various wrongful

acts in completing the loan application.  For example, Loan

Network allegedly failed to provide Dagupion with a completed

copy of the loan application, id. ¶ 23; overstated Dagupion's

income to "increase his chances of qualifying for a loan he

ordinarily would not" qualify for, id. ¶ 26; failed to provide

federally and state mandated disclosures; and concealed material

terms of the loan, id. ¶ 43.

Dagupion's loan was transferred to Defendant Green Tree

Servicing, LLC, in 2009.  Id. ¶ 50.  Also in 2009, Dagupion

requested a modification of his loan, but his request was denied.

Id. ¶ 48.  Green Tree informed Dagupion that the "investor/owner

of the loan was unwilling to modify."  Id. ¶ 51.  Green Tree

allegedly failed to respond to Dagupion's request for

identification of the owner of the loan and for a copy of the

original note and mortgage.  Id. ¶¶ 53, 55.  On April 6, 2011,

Fannie Mae filed for ejectment in state court.  Id. ¶ 57.

B.  Procedural History.

On February 24, 2011, Dagupion filed the original

complaint in this case, naming the same Defendants now named in

the FAC, and alleging that Defendants had violated state and

4

federal statutes in connection with Dagupion's mortgage loans. Complaint, Feb. 24, 2011, ECF No. 1.  Green Tree and PNC filed separate motions to dismiss the complaint.  Green Tree Servicing, LLC's Motion to Dismiss Plaintiff's Complaint, April 4, 2011, ECF No. 12; Defendant PNC Bank, National Association, Successor by Merger to National City Mortgage, A Division of National City Bank, Incorrectly Named in the Complaint as National City Mortgage Co.'s Motion to Dismiss Complaint, April 20, 2011, ECF No. 16.

On June 23, 2011, this court granted the motions and dismissed the complaint without prejudice because it lacked sufficient factual detail to support its claims.  Order Dismissing Complaint, June 23, 2011, ECF No. 35.  The court explained that the complaint was virtually identical to other complaints submitted by Dagupion's attorney in other cases and dismissed by this court.  The court said, "[Counsel] has known for at least three months that this boilerplate Complaint was rejected by this court and yet never filed an Amended Complaint." Id. at 6.  The court gave Dagupion leave to amend, but cautioned counsel to comply with his Rule 11 obligations.  Id. at 9.

Dagupion filed an amended complaint, the FAC in issue, on July 14, 2011.  Green Tree moved to dismiss.  Defendant Green Tree Servicing LLC's Motion to Dismiss Plaintiff's First Amended Complaint Filed July 14, 2011, July 28, 2011, ECF No. 37.  On

5

September 14, 2011, the court granted Green Tree's motion as unopposed, noting that rather than substantively opposing the motion, Dagupion's attorney had stated that he was too busy to address every case, motion, and pleading, and that Dagupion needed to file a motion to amend the complaint further.  Order Dismissing First Amended Complaint with Respect to Defendant Green Tree Servicing, LLC ("Order Dismissing FAC") at 2, Sept. 9, 2011, ECF No. 41.  The court gave Dagupion until September 29, 2011, to seek leave to file a Second Amended Complaint, again instructing counsel to ensure that no unwarranted claims were asserted.  Order Dismissing FAC at 3.  On September 29, 2011, Dagupion moved for leave to file a Second Amended Complaint. Plaintiff Marc Dagupion's Motion for Leave to File Second Amended Complaint, Sept. 9, 2011, ECF No. 42.  Magistrate Judge Chang denied Dagupion's motion to file a Second Amended Complaint on November 10, 2011.  Order 1) Denying Plaintiff's Motion For Leave to File Second Amended Complaint and 2) Denying Defendant Green Tree Servicing, LLC's Motion for Leave to File Surreply, Nov. 15, 2011, ECF No. 69.

On September 30, 2011, PNC filed the present motion seeking Rule 11 sanctions against Dagupion and his attorney.  In compliance with Rule 11, on September 7, 2011, PNC served Dagupion's attorney with a proposed Motion for Sanctions and a Rule 11 letter requesting that Dagupion withdraw the FAC.

6

Defendant PNC Bank, National Association's Motion for Rule 11
Sanctions ("Motion") Ex. A, ECF No. 44-2.  When PNC subsequently
filed its motion with the court, Dagupion informed the court that
he planned to dismiss the FAC and asked PNC to withdraw the
motion.  Plaintiff Marc Dagupion's Position Statement, Oct. 31,
2011, ECF No. 59.  Dagupion did not withdraw the FAC.  Magistrate
Judge Chang later granted Dagupion leave to file a late
opposition.  ECF No. 66.

IV.      ANALYSIS.

         At the outset, the court emphasizes that Dagupion's
attorney has been warned before that asserting unwarranted claims
is a violation of his Rule 11 obligations.  See Order Dismissing
Complaint at 9; Order Dismissing FAC at 3; Rey v. Countrywide
Home Loans, Inc., Civil No. 11-00142 JMS/KSC, 2011 WL 2160679,
at *3 (D. Haw. June 1, 2011).  A judge in this district has
recently sanctioned Dagupion's attorney in a case similar to this
one for violating Rule 11.  Rey v. Countrywide Home Loans, Inc.,
Civil No. 11-00142 JMS/KSC, 2011 WL 4103704 (D. Haw. Sept. 13,
2011).  In that case, the attorney submitted an amended complaint
that asserted dismissed claims without making any substantive
changes to them.  Id. at *3.

         This district, like many others, has recently seen a
marked increase in suits against lenders involved in
foreclosures.  Id.  Many complaints may be filed by the same

attorney in nearly identical form, and judges in this district have entered numerous orders outlining the pleading requirements for the various commonly pled claims.  Dagupion's attorney has represented plaintiff borrowers in several dozen of these cases. Often, he files a "form complaint" similar to the original complaint in this action, asserting claims that courts have repeatedly dismissed for failure to state a cognizable claim. See, e.g., Rey, 2011 WL 2160679; Casino v. Bank of Am., 2011 WL 1704100 (D. Haw. May 4, 2011); Letvin v. Amera Mortg. Corp., 2011 WL 1603635 (D. Haw. Apr. 27, 2011); Rymal v. Bank of Am., 2011 WL 1361441 (D. Haw. Apr. 11, 2011); Enriquez v. Aurora Loan Services, LLC, 2011 WL 1103809 (D. Haw. Mar. 22, 2011); Kapahu v. Bac Home Loans Servicing, LP, 2010 WL 2734774 (D. Haw. July 8, 2010).

In dismissing the original complaint in this action, this court "caution[ed] [counsel] to comply with his Rule 11 obligations in all future filings with this court."  Order Dismissing Complaint at 9.  This court further stated that "[a]ny future filing that fails to comply with those obligations may result in serious repercussions, including but not limited to substantial financial sanctions."  Id.  In particular, the court instructed counsel that any amended complaint should not include any unwarranted claims, such as claims barred by the relevant statute of limitations, and that he must have a good faith basis

for bringing specific claims to avoid possible sanctions.  Id.
at 11.  Furthermore, the court stated:  "because the claims
asserted in various 'form complaints' filed by [counsel] on
behalf of his clients have been rejected numerous times, Dagupion
should consider whether it is appropriate to assert them in this
action at all."  Id. at 12.

　　　　Dagupion's attorney has disregarded the court's
warning.  He does not say that this disregard flows from his
conclusion that this court will be reversed when he appeals.  He
simply appears not to put in the time to address the court's
concerns.  Dagupion's FAC asserts nineteen causes of action,
including all eleven of the claims asserted in the original
complaint.  PNC argues that all nineteen of the causes of actions
as pled in the FAC are deficient and states how each cause of
action warrants Rule 11 sanctions.

　　　　Dagupion's opposition does not address PNC's arguments.
Instead, it mostly attacks the entire mortgage lending industry
without even mentioning PNC.  Where it does respond to the
present motion, it appears to assert that (1) PNC has not
provided Dagupion with sufficient time to respond because the
Rule 11 motion did not provide proper notice by specifically
identifying the alleged deficiencies; (2) counsel is aware of
alleged lender abuse across the nation in the mortgage market
that forms the legal and factual bases for the FAC; (3) the

similarity of the FAC to other complaints counsel has filed does not render the FAC frivolous; (4) the volume of his cases and the rapidly developing law have prevented counsel from having "sufficient time to go back and address the alleged deficiencies"; and (5) even though the FAC was "inarticulately" drafted due to "concealment by lenders and their predecessors and successors," a good faith effort has been made and "enough information has been pled that would enable a party to answer and participate in discovery."  Plaintiff Marc Dagupion's Memorandum in Opposition to Defendant PNC Bank, National Association's Motion for Rule 11 Sanctions ("Opposition") at 4-14, Nov. 11, 2011, ECF No. 67.

        These arguments are unavailing.  As PNC's reply states, "The Opposition offers nothing in the way of meritorious argument or evidentiary support."  Defendant PNC Bank, National Association's Reply to Plaintiff's Memorandum in Opposition, Nov. 16, 2011, ECF No. 70.  The opposition does not respond to any of the substantive deficiencies identified by PNC.  Most astoundingly, counsel states that "[i]n a perfect world, we can learn about how the court views certain claims and we can go back and fix claims raised in other cases."  Opposition at 12. Counsel ignores the rulings he has received in many of his cases addressing many of the claims asserted in Dagupion's FAC.  He has had more than ample opportunity to learn how this district views

the claims he has brought, and he has had opportunities to modify those claims based on the rulings he has received.  He should be intimately familiar with the requirements for pleading the claims in Dagupion's FAC.

The court thus agrees that sanctions are warranted, but based on only some of Dagupion's causes of action.  See Holgate v. Baldwin, 425 F.3d 671, 677 (9th Cir. 2005) ("[T]he mere existence of one non-frivolous claim in a complaint does not immunize it from Rule 11 sanctions." (quotation marks omitted)) (quoting Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1364 (9th Cir. 1990)).

A.   Counts in the Original Complaint.

The court first addresses the eleven claims that Dagupion asserted in the original complaint and has reasserted in the FAC: Count II--"Violations of the Real Estate Settlement Procedures Act" ("RESPA"); Count III--"Violations of Federal Truth-in-Lending Act" ("TILA"); Count IV--"Violation of Fair Credit Reporting Act" ("FCRA"); Count V--"Fraudulent Misrepresentation"; Count VI--"Breach of Fiduciary Duty"; Count VII--"Unjust Enrichment"; Count XII--"Mistake"; Count XIII--"Unconscionability"; Count XIV--"Unfair and Deceptive Acts or Practices" ("UDAP"); Count XV--"Failure to Act in Good Faith"; and Count XVIII--"Negligent and/or Intentional Infliction of Emotional Distress."  PNC argues that Dagupion has "done almost

11

nothing to attempt to cure the defects of these claims

(1) despite the arguments presented in PNC's Motion to Dismiss,

and (2) the Court's reasoning and direction presented in the June

23, 2011 Order."  Motion at 20.  Six of these eleven claims are

indeed frivolous under Rule 11.

> 1.    Counts II, III, IV, VI, XIII, and XV Are
>       Frivolous Under Rule 11 and Warrant
>       Sanctions.

> a.    Count II--RESPA.

Count II asserts that PNC violated RESPA,

12 U.S.C. § 2607, by accepting "charges for the rendering of real

estate services which were in fact charges for other than

services actually performed."  FAC ¶ 86.  The statute of

limitations for a RESPA claim is either one or three years from

the date of the violation, depending on the type of violation.

Section 2614 of the United States Code provides:

> Any action pursuant to the provisions of
> section 2605, 2607, or 2608 of this title may
> be brought in the United States district
> court or in any other court of competent
> jurisdiction, for the district in which the
> property involved is located, or where the
> violation is alleged to have occurred, within
> 3 years in the case of a violation of section
> 2605 of this title and 1 year in the case of
> a violation of section 2607 or 2608 of this
> title from the date of the occurrence of the
> violation . . . .

12 U.S.C. § 2614.  As Dagupion took out his mortgage loans on

April 10, 2007, Dagupion should have asserted this claim by April

12

10, 2008, to file within the statute of limitations.  The original complaint was not filed until 2011, beyond the one-year statute of limitations.  In the order dismissing the original complaint, the court specifically instructed Dagupion's attorney to pay attention to the statue of limitations when filing an amended complaint.  Order Dismissing Complaint at 11. Furthermore, counsel has had ample notice of the applicable statute of limitations, as his RESPA claim has been dismissed in other cases he has filed based in part on the statue of limitations.  See, e.g., Rey, 2011 WL 2160679, at *7; Letvin, 2011 WL 1603635, at *6.

Count II also alleges that Loan Network did not provide the "borrowers" with a special information booklet.  FAC ¶ 94. As this court ruled in one of counsel's previous cases, RESPA does not create a private right of action for failure to provide a special information booklet.  Casino, WL 1704100, at *10 (citing Santiago v. Bismark Mortg. Co., LLC, Civil No. 10-00467 SOM/KSC, 2011 WL 839762, at *5-*6 (D. Haw. March, 4, 2011)). Given the court's previous rulings, Dagupion's RESPA claim is frivolous; it is legally baseless and the court cannot conclude that counsel conducted a reasonable and competent inquiry before filing the FAC as to this cause of action.

The opposition is conspicuously silent as to what error the previous orders have contained with respect to this claim.

13

It therefore cannot be said that counsel is only preserving the record for appeal in reasserting this claim.

### b.   Count III--TILA.

Count III asserts that Dagupion has a right to rescind the loan transaction and to recover damages under TILA.  FAC at ¶¶ 99, 102.   Dagupion's TILA damages and rescission claims are time-barred.  Any claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).  Furthermore, TILA provides a right to rescind a loan transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing" the required material disclosures.  15 U.S.C. § 1635(a).  If the required disclosures are not provided, however, the right to rescission expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f).  Because Dagupion alleges that he consummated his loans in April 2007, the respective TILA statute of limitations ran long before the original complaint was filed on February 24, 2011.  Counsel knew or should have known of the applicable statute of limitations, as it has been a ground on which courts have dismissed his clients' TILA claims in previous cases.  See, e.g., Rey, 2011 WL 2160679, at *7; Letvin, 2011 WL

14

1603635, at *4; <u>Santiago</u>, 2011 WL 839762, at *7-8.  The TILA claims asserted in the FAC are thus frivolous and warrant Rule 11 sanctions.

c.   <u>Count IV--FCRA.</u>

Count IV asserts that Dagupion is entitled to recover from the Defendants for their negligent and willful non-compliance with FCRA.  FAC ¶ 106.  The FAC alleges that "Defendants qualified as a provider of information to the credit reporting agencies . . . [and] wrongfully, improperly, and illegally reported negative information as to [Dagupion] to the credit reporting agencies."  FAC ¶ 105.  This claim fails to distinguish among Defendants.  In its June 23 order, this court specifically told counsel that failing to distinguish among Defendants and to recognize the separate role of each party may have amounted to a violation of Rule 11(b)(2) and (3).  Order Dismissing Complaint at 9.  The court further instructed that an amended complaint should explain "what each Defendant did and how those specific facts create a plausible claim for relief."  <u>Id.</u> at 11.  In light of the June 23 order, counsel knew or should have known that this claim, which continued to fail to differentiate the Defendants, was legally and factually baseless.

In addition, Dagupion does not have a private right of action under FCRA based on the alleged facts.  This court has held that although 15 U.S.C. § 1681s-2(a) imposes a duty on

15

furnishers of credit information to provide accurate information, only federal and state agencies may enforce that duty.  <u>Diana I Am v. National City Mortg. Co.</u>, Civil. No. 09-00060 SOM/KSC, 2010 WL 571936, at *10 (D. Haw. Feb. 17, 2010) (citing <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1154 (9th Cir. 2009); <u>Nelson v. Chase Manhattan Mortg. Corp.</u>, 282 F.3d 1057, 1059-60 (9th Cir. 2002); 15 U.S.C. § 1681s-2(d) (noting that duties created under § 1681s-2(a) are enforced exclusively by federal agencies and officials and state officials)).  An individual may bring a private cause of action only when the furnisher is given notice from a credit reporting agency of a dispute and fails to investigate within specified time limits.  <u>Id.</u>  <u>See also</u> <u>Rey</u>, 2011 WL 2160679, at *8 (dismissing the same claim pled by Dagupion's attorney).  Count IV is frivolous.

         d.   <u>Count VI--Breach of Fiduciary Duty.</u>

Count VI alleges that Loan Network and National City acted as "fiduciaries" and breached their fiduciary duty to Dagupion by "fraudulently inducing [Dagupion] to enter into a mortgage transaction which was contrary to [Dagupion's] stated intentions; contrary to [Dagupion's] interests; and contrary to [Dagupion's] preservation of his home."  FAC ¶ 118.  A borrower-lender relationship, however, is not fiduciary in nature:

> Lenders generally owe no fiduciary duties to their borrowers.  <u>See, e.g.</u>, <u>Spencer v. DHI</u>

16

> Mortg. Co., 642 F. Supp. 2d 1153, 1161 (E.D.
> Cal. 2009) ("Absent 'special circumstances' a
> loan transaction 'is at arms-length and there
> is no fiduciary relationship between the
> borrower and lender.'") (quoting Oaks Mgmt.
> Corp. v. Super. Ct., 51 Cal. Rptr. 3d 561
> (Cal. App. 2006)); Ellipso, Inc. v. Mann, 541
> F. Supp. 2d 365, 373 (D.D.C. 2008) ("[T]he
> relationship between a debtor and a creditor
> is ordinarily a contractual relationship
> . . . and is not fiduciary in nature.")
> (citation omitted); Nymark v. Heart Fed. Sav.
> & Loan Ass'n, 283 Cal. Rptr. 53, 54 n.1 (Cal.
> App. 1991) ("The relationship between a
> lending institution and its borrower-client
> is not fiduciary in nature.").

McCarty v. GCP Management, LLC, Civil No. 10-00133 JMS/KSC, 2010 WL 4812763, at *5 (D. Haw. Nov. 17, 2010). Count VI is baseless, as counsel was told in an order in one of his earlier cases. See Casino, 2011 WL 1704100, at *13 (holding that, the Casinos, represented by the same attorney who represents Dagupion, failed to state a claim when they alleged breach of fiduciary duty by their lender); Rey, 2011 WL 2160679, at *10-11 (same).

> e.   Count XIII--Unconscionability.

Count XIII asserts that the terms and conditions of the note and mortgage are unconscionable because Dagupion "did not understand the loan transaction, or the true terms of the note and mortgage and was not fully and timely informed of the same by Defendants or its predecessors and/or its employees and agents, who held superior bargaining power over [Dagupion]." FAC ¶¶ 165-66.

"Unconscionability" is generally a defense to the enforcement of a contract, not a proper claim for affirmative relief.  See, e.g., Casino, 2011 WL 1704100, at *14 (citing Gaitan v. Mortg. Elec. Registration Sys., 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009) ("Unconscionability may be raised as a defense in a contract claim, or as a legal argument in support of some other claim, but it does not constitute a claim on its own."), and Barnard v. Home Depot U.S.A., Inc., 2006 WL 3063430, at *3 n.3 (W.D. Tex. Oct. 27, 2006) (citing numerous cases for the proposition that neither the common law nor the Uniform Commercial Code allows affirmative relief for unconscionability)).  To the extent unconscionability can be addressed affirmatively as part of a different or independent cause of action, such a claim "is asserted to prevent the enforcement of a contract whose terms are unconscionable." Skaggs v. HSBC Bank USA, N.A., 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010) (emphasis in original).[1]  Skaggs dismissed a

_____

[1] In Skaggs, the court noted in dicta that "at least one Hawaii court has addressed unconscionability when raised as a claim seeking rescission."  2010 WL 5390127, at *3 n.2 (citing Thompson v. AIG Haw. Ins. Co., 111 Haw. 413, 142 P.3d 277 (2006)).  This was not an indication that one could raise an affirmative claim for "unconscionability."  Indeed, in Thompson, the complaint did not assert a separate count for rescission or unconscionability.  See Thompson, 111 Haw. at 417, 142 P.3d at 281 (indicating that the specific counts were for negligence, fraud, breach of duty, and unfair and deceptive trade practices under Haw. Rev. Stat. § 480-2).  In Thompson, the remedy of rescission was based on an independent claim.  Similarly, a remedy for an unconscionable contract may be possible; a

18

"claim" for unconscionability because it challenged only conduct such as "obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," but not the breach of any specific contractual term. Id.  Count XIII similarly fails to identify or challenge any particular contract term as unconscionable.  Counsel has previously asserted this claim, which was dismissed on the grounds stated above.  Casino, 2011 WL 1704100, at *14; see also Rey, 2011 WL 2160679, at *9.  Count XIII is frivolous.

> f.  Count XV--Failure to Act in Good Faith.

Count XV alleges that "Defendants or its predecessors and/or its employees and agent" owed Dagupion a duty to deal with him fairly and in good faith.  FAC ¶ 186.  Dagupion alleges that they violated that duty by:

> making various misrepresentations of material
> fact and/or omissions of material fact, not
> making the mandatory federal law disclosures,
> failing to disclose that [Dagupion] was not
> financially qualified for the loan, and/or
> the likelihood of the value of the Property
> falling, that [Dagupion] was likely to
> default, and would not qualify for
> refinancing.

Id. at 187.  This claim in essence asserts the tort of "bad faith."  See Best Place v. Penn Am. Ins. Co., 82 Haw. 120, 128,

---

stand-alone claim asserting only "unconscionability," however, is improper.  See, e.g., Gaitan, 2009 WL 3244729, at *13.

19

920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach

of implied covenant of good faith and fair dealing in an

insurance contract).  This very claim, asserted by counsel in

Casino, was dismissed.  2011 WL 1704100.  In Casino, this very

judge held:

> Although bad faith is an accepted tort when a
> plaintiff is a party to an insurance
> contract, the tort has not been recognized in
> Hawaii based on a mortgage loan contract.
>
> Moreover, although commercial
> contracts for sale of goods also require good
> faith in their performance and enforcement,
> this obligation does not create an
> independent cause of action. See Stoebner
> Motors, Inc. v. Automobili Lamborghini
> S.P.A., 459 F. Supp. 2d 1028, 1037–38 (D.
> Haw. 2006). Hawaii courts have noted that
> "[o]ther jurisdictions recognizing the tort
> of bad faith ... limit such claims to the
> insurance context or situations involving
> special relationships characterized by
> elements of fiduciary responsibility, public
> interest, and adhesion." Id. at 1037 (quoting
> Francis v. Lee Enters., 89 Haw. 234, 238, 971
> P.2d 707, 711 (1999)).  The Casinos thus do
> not properly plead an independent claim of
> bad faith.
>
> Importantly, even assuming a bad
> faith tort exists outside the insurance
> context, "[a] party cannot breach the
> covenant of good faith and fair dealing
> before a contract is formed." Contreras v.
> Master Fin., Inc., 2011 WL 32513, at *3 (D.
> Nev. Jan. 4, 2011) (citing Indep. Order of
> Foresters v. Donald, Lufkin & Jenrette, Inc.,
> 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n
> implied covenant relates only to the
> performance under an extant contract, and not
> to any pre-contract conduct.")).  Hawaii
> follows this distinction. See Young v.
> Allstate Ins. Co., 119 Haw. 403, 427, 198

20

P.3d 666, 690 (2008) (indicating that the
covenant of good faith does not extend to
activities occurring before consummation of
an insurance contract).

All of [the allegations in Casino's
complaint regarding the covenant of good
faith and fair dealing] concern precontract
activities (failing to disclose terms,
failing to conduct proper underwriting, and
making an improper loan).  Defendants cannot
be liable for breaching a contract covenant
when no contract existed.  <u>See</u> <u>id.</u>; <u>see also</u>
<u>Larson v. Homecomings Fin., LLC</u>, 680 F. Supp.
2d 1230, 1237 (D. Nev. 2009) ("Because
Plaintiffs' claim revolves entirely around
alleged misrepresentations made before the
[mortgage loan] contract was entered into,
[the bad faith claim] fails as a matter of
law.").

<u>Id.</u> at *6; <u>accord,</u> <u>e.g.,</u> <u>Rodenhurst v. Bank of America</u>, Civil No.

10-00167 LEK-BMK, 2011 WL 4625696, at *10 (D. Haw. Sept. 30,

2011) (dismissing the same claim pled by Dagupion's attorney);

<u>Cootey v. Countrywide Home Loans, Inc.</u>, Civil No. 11-00152

JMS/KSC, 2011 WL 2441707 (D. Haw. June 14, 2011) (same).  Count

XV is thus frivolous.

      2.   Counts V, VII, XII, XIV, and XVIII Do Not
            <u>Give Rise to Rule 11 Sanctions.</u>

         a.   Counts V, XII, XIV, and XVIII Allegedly
             Fail to Plead Sufficient Facts But Do
             <u>Not Warrant Rule 11 Sanctions.</u>

PNC argues that Count V--Fraudulent Misrepresentations,

Count XII--Mistake, Count XIV--Unfair and Deceptive Acts, and

Count XVIII-Negligent and/or Intentional Infliction of Emotional

Distress are deficient because the FAC does not plead sufficient

facts to support those claims.  Motion at 27, 31, 33, 36.

However, a failure to plead sufficient facts is not by itself

sanctionable conduct under Rule 11.  <u>Cf.</u> <u>Holgate</u>, 425 F.3d at 676

(finding a claim frivolous when the plaintiffs could not satisfy

one of the elements of the cause of action--that they belonged to

a suspect class--in addition to failing to plead sufficient

facts).  As discussed above, a complaint violates Rule 11 when it

is factually or legally baseless and has been made without a

reasonable and competent inquiry.  <u>See, e.g.</u>, <u>id.</u>, 425 F.3d

at 676.  A failure to plead sufficient facts or elements of a

cause of action does not necessarily mean that the cause of

action is baseless.  To the extent Dagupion asserts claims that

fail to plead sufficient facts, that does not warrant Rule 11

sanctions.  Of course, pleading defects may result in dismissal,

but that is by no means the same thing as Rule 11 sanctions.

> b.   <u>Count VII--Unjust Enrichment.</u>

Count VII asserts that "Defendants have been unjustly

enriched at the expense of [Dagupion]," and demands restitution.

FAC ¶¶ 125-27.  "To prevail on an unjust enrichment claim, a

plaintiff must show that: 1) it has conferred a benefit upon the

defendant, and 2) that the retention of the benefit was unjust."

<u>Caraang v. PNC Mortgage</u>, ---F. Supp.2d---, 2011 WL 2470637,

at *18 (D. Haw. June 20, 2011) (citations omitted).  <u>Caraang</u>

stated, "As a general rule, an action for unjust enrichment

cannot lie in the face of an express contract." Id. (citation omitted).  In Caraang, both the note and the mortgage were express agreements that the plaintiffs had executed in connection with their loan, and the judge in that case concluded that the plaintiffs could not pursue an unjust enrichment claim.  Id.

However, it is not clear that all judges in this district are taking the position taken in Caraang.  Dagupion's attorney has had his unjust enrichment claims in other cases dismissed on a different ground, i.e., his failure to plead sufficient facts.  See, e.g., Cootey, 2011 WL 2441707, at *12; Rymal, 2011 WL 1361441, at *10.  Thus, the district judges of this district, who do not bind each other, have taken different approaches, and counsel was entitled to explore what position each judge was taking on unjust enrichment.  This judge therefore declines to rule that Count VII is legally and factually baseless, as opposed to being possibly insufficiently pled. Count VII does not warrant Rule 11 sanctions.

B.   Counts Asserted For the First Time in the FAC.

The FAC asserts eight new claims: Count I--"Violations of Home Ownership Equity Protection Act" ("HOEPA"); Count VIII-- "Civil Conspiracy and Aiding and Abetting"; Count IX--"Complaint to Quiet Title"; "Count X--"Usury and Fraud"; Count XI-- "Violation of Hawaii Bureau of Conveyance Regulations"; Count XIX--"Violation of Gramm-Leach-Bliley Act" ("GLBA");

Count XX--"Violation of the Hawaii Constitutional Right to Privacy"; and Count XXI--"Violation of Hawaii Revised Statutes Chapter 667."

PNC first argues that these counts violate Rule 11 because they were improperly added to the complaint.  PNC contends that this court granted Dagupion leave to amend the complaint only to cure deficiencies in the existing counts, but not to include additional causes of action.  The court imposed no such limitation.  In granting Dagupion leave to file an amended complaint, the court stated:  "Dagupion may, through his counsel, reassert the claims asserted in the original Complaint."  Order Dismissing Complaint at 11.  The court did not forbid the assertion of new claims.

PNC argues in the alternative that all of the new counts lack an "identifiable basis in fact and/or are not supported by existing law."  Motion at 11.  Two of the new causes of action are indeed baseless and would have been revealed as such if counsel had conducted a reasonable inquiry.  Those counts provide further grounds for Rule 11 sanctions against counsel.

1.   New Counts that are Grounds for Rule 11 Sanctions.

a.   Count I--HOEPA.

Count I asserts that Loan Network and National City violated HOEPA, 15 U.S.C. § 1639, by "failing to make the [required] disclosure in a conspicuous fashion" and "engaging in

24

a pattern and practice of extending credit to plaintiff without regard to his ability to repay." FAC ¶¶ 77(a)-(b). Dagupion's attorney knew or should have known any HOEPA claim by Dagupion was time-barred. Counsel was told in a previous case decided by Judge Leslie Kobayashi that HOEPA claims are subject to the same statute of limitations as TILA claims:

> HOEPA is an amendment to TILA and is therefore subject to the same statute of limitations. <u>Herschelman v. New Century Mortg. Corp.</u>, Cv. No. 09-00461 DAE-KSC, 2010 WL 4448224, at *4 n. 3 (D. Haw. Oct.29, 2010) (citation omitted). TILA claims seeking damages are subject to a one-year statute of limitations that begins to run from the date the loan is consummated, but the doctrine of equitable tolling may extend that period. 15 U.S.C. § 1640(e); <u>Cannon v. U.S. Bank, NA</u>, Civ. No. 11-00079 HG-BMK, 2011 WL 1637415, at *5 (D. Haw. Apr.29, 2011) (citing <u>King v. California</u>, 784 F.2d 910, 915 (9th Cir. 1986)). Where the borrower allegedly did not receive the required TILA disclosures, the borrower must bring his rescission claim within three years after the loan consummation. The three-year period is a statute of repose, which is not subject to equitable tolling. 15 U.S.C. § 1635(f); <u>Cannon v. U.S. Bank</u>, 2011 WL 1637415, at *6 (some citations omitted) (citing <u>Miquel v. Country Funding Corp.</u>, 309 F.3d 1161, 1164 9th Cir. 2002)).

<u>Enriquez v. Countrywide Home Loans, FSB</u>, Civil No. 10-00405 LEK-RLP, 2011 WL 3861402, at *3 (D. Haw. Aug. 31, 2011). Over one year before Dagupion filed his original complaint, this very judge similarly held (in a case not involving Dagupion's counsel) that claims are subject to a one-year statute of limitations.

Diana I Am, 2010 WL 571936, at *8.  As stated above, Dagupion
cannot meet the TILA statue of limitations because he executed
his loans on April 17, 2007.  Although the Enriquez order was
issued after Dagupion's counsel prepared the FAC, it was issued
before PNC served counsel with its proposed Rule 11 motion and
before counsel responded to the motion.  In addition, this court
specifically instructed counsel to be mindful of the statute of
limitations in any amended complaint.  A reasonable inquiry would
have revealed that a HOEPA claim is time-barred.  Count I thus
violates Rule 11.

> b.   Count XI--Violation of the Hawaii Bureau
>      of Conveyance Regulations.

Count XI attempts to assert a claim against an entity
that is not a party in this case.  It states that "MERS should
have filed a SMRF [special mortgage recording fee] and an
assignment of mortgage for each assignment of sale."  FAC ¶ 154.
It further states that "failure to file these assignments
prohibits MERS from exercising any judicial procedures against
the borrower."  Id. ¶ 159.  MERS is not mentioned anywhere else
in the FAC.  MERS has, however, appeared as a defendant in many
of Dagupion's attorney's previous cases.  See, e.g., Casino, 2011
WL 1704100; Uy v. Wells Fargo Bank, N.A., Civil No. 10-00204 ACK-
RLP, 2011 WL 1539832 (D. Haw. Apr., 20, 2011).  It appears that
counsel may have carelessly borrowed this language from another
complaint and pasted it into the FAC without adapting it to the

present case.  As stated above, this court has warned counsel about using form complaints.  Cutting and pasting causes of actions from previous complaints in other cases can lead to the filing of totally inapplicable claims.  While an error of that nature might be excused in another context, here counsel did not correct his error and withdraw Count XI when served with the proposed Rule 11 motion.  Under those conditions, the error cannot be excused.  As pled in the FAC, Count XI violates Rule 11.

       2.   <u>New Counts That Do Not Violate Rule 11.</u>

          a.   Counts VIII, IX, X and XX Allegedly Fail to Plead Sufficient Facts But Do Not <u>Warrant Rule 11 Sanctions.</u>

PNC argues that Counts VIII IX, X, and XX do not plead sufficient facts or fail to include elements of the claims.  PNC does not argue that the claims are legally baseless.  As discussed above, insufficient facts alone do not justify sanctions under Rule 11(b)(2).  Not all causes of action that lack sufficient factual allegations are baseless.  Similarly, the omission of an element of a cause of action does not mean that a claim is baseless for Rule 11 sanction purposes.

          b.   <u>Count XIX--GLBA.</u>

Count XIX asserts that "the mandatory notices [required by the GLBA] were not provided by Defendants to Plaintiff."  FAC ¶ 197.  However, there is no private right of action under the

Gramm-Leach-Bliley Act.   See, e.g., Liu v. Wells Fargo Home Mort. Inc., Civil No. 10-00324 JMS/KSC, 2011 WL 1362101, at *6 (D. Haw. Apr. 8, 2011) ("[E]ven if Defendants violated the GLBA, there is no private cause of action to enforce its terms.") (citations omitted).

At the time counsel filed the FAC, this district had addressed the GLBA in only one case, Liu, brought against a lender involved in a foreclosure.  A single ruling two months before counsel filed the FAC might not have appeared definitive to an attorney conducting a reasonable inquiry.  Liu was decided by a different judge and is not binding in this action.  Rule 11 sanctions are thus not warranted for Count XIX.

c.   Count XXI--Hawaii Revised Statutes Ch. 667.

Finally, PNC argues that Count XXI violates Rule 11 because its factual allegations are incorrect.  PNC offers evidence contradicting the facts in the FAC.  Resolving factual disputes is inappropriate at this stage of the proceedings. Count XXI is thus not a ground for Rule 11 sanctions.

C.   Appropriate Sanctions.

PNC requests that the court impose sanctions on both Dagupion and his attorney, and that sanctions include reasonable attorneys' fees and costs incurred in defending itself against Dagupion's frivolous claims.  Motion at 38.  The court has

28

discretion to determine sanctions, keeping these principles in mind:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4). "[T]he court must not impose a monetary sanction . . . against a represented party for violating Rule 11(b)(2)."  Fed. R. Civ. P. 11(c)(5)(A).

Weighing the extent of the Rule 11 violation as well as the need to deter repetition of similar conduct in both this action and in other actions, the court finds that sanctions against only counsel, not Dagupion, are warranted.  As discussed above, counsel was recently sanctioned $750 under Rule 11 by another judge in this district for submitting an amended complaint that reasserted dismissed claims without changing them. Rey, 2011 WL 4103704, at *3.  This court has also previously warned counsel about Rule 11 obligations.  A monetary sanction award payable to PNC is appropriate as a means of deterring future misconduct by counsel in this and other actions.  The amount of the sanction shall be determined after PNC either (i) documents its fees and costs in compliance with Local Rule

54.3(d)(1), (2), and (3), or (ii) submits a declaration stating that its fees and costs incurred in connection with preparing and arguing the present motion significantly exceed $2500.  In the event PNC selects option (ii), the court intends to award sanctions of no more than $2500.  Option (i) would likely require PNC to expend more time with no guarantee of a greater sanction award or of a collectible award, but the court might or might not in that event limit itself to $2500.  PNC's deadline for documenting its selection is December 29, 2011.

IV.      CONCLUSION.

        For the foregoing reasons, the court SANCTIONS Dagupion's attorney for violating Federal Rule of Civil Procedure 11.  By December 29, 2011, PNC must document its fees and costs or submit the requested declaration.


        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, December 7, 2011.




                    /s/ Susan Oki Mollway
                    Susan Oki Mollway
                    Chief United States District Judge


Dagupion v. Green Tree, LLC, Civil No. 11-00120 SOM-KSC; ORDER GRANTING DEFENDANT PNC BANK, NATIONAL ASSOCIATION'S MOTION FOR RULE 11 SANCTIONS